183 So.2d 912 (1966)
BETHLEHEM STEEL COMPANY, a corporation,
v.
Thomas J. PAYNE.
No. 43830.
Supreme Court of Mississippi.
March 7, 1966.
*913 Eaton, Cottrell, Galloway & Lang, Gulfport, for appellant.
Martin & Taylor, Eates & Alexander, Gulfport, for appellee.
BRADY, Justice:
This is an appeal from a decree of the Chancery Court of Harrison County, Mississippi, against Bethlehem Steel Company, which has qualified to do business in this State. The court accorded the complainant, Thomas J. Payne, who resides at Long Beach, Mississippi, the sum of $2,500 for medical expenses, $945 for compensation at the rate of $35 per week for twenty-seven weeks, and attorneys' fees in the sum of $1,000, totalling $4,445 in compensation benefits based upon the Workmen's Compensation Law of the State of Louisiana.
Stated as laconically as possible, the pertinent facts are these. Appellee was an electric welder, and for eight years he followed this occupation, working in many States. From June 17, 1962 to May 25, 1963, a period of eleven months and eight days, appellee was employed by appellant as an electrical welder in the State of North Dakota. In that State, his work required him to do welding in enclosed silos, in close proximity with four or more other welders, in the construction of Minute Man Missile Projects.
The record discloses that on June 4, 1963, appellee was again employed by appellant to work at the Michoud Plant, adjacent to New Orleans, Louisiana. He worked uninterruptedly for two months and twenty-four days, from June 4, 1963 through August *914 28, 1963, four days subsequent to the date he was injured. On this job he was employed, not as a welder, but as a "hook-on" man. His duties consisted of hooking iron materials and scaffolding boards on to a hoist to be carried to other employees working on the scaffold.
On August 24, 1963, while working as a "hook-on" man, he was struck on the back above the right shoulder blade by a piece of 2x4 timber, approximately two feet long and weighing approximately two pounds, which fell from a considerable height. The appellee testified that he sporadically welded, possibly four or five times, while employed at Michoud Plant by the appellant; that he spent not more than five or ten minutes on any occasion, and not more than a total of thirty minutes' time was spent in all of appellee's outdoor welding in the State of Louisiana.
As a result of the contusion received from the falling 2x4 timber, appellee was examined, x-rayed, and given a tetanus booster shot at Michoud Plant. On August 26 he resumed his work, but on the same day he was subsequently referred by appellant to a firm of doctors in New Orleans, Louisiana, specializing in industrial medicine. In the course of their examination x-rays were taken and an infiltration of the upper lobes of his lungs was discovered, which was otherwise undiagnosed but led the appellant to suspect that appellee had tuberculosis.
The record is not positive, but appellant advised the appellee to seek the counsel and aid of his family physician. The appellee quit his job, or his employment was terminated, and then he sought the assistance of the Veterans' Administration Hospital in Biloxi, Mississippi. This hospital, being unable to confirm an infection of tuberculosis, transferred appellee to the Veterans' Administration in Jackson, Mississippi, where again tuberculosis could not be diagnosed or ruled out. An exploratory operation was recommended and performed on December 20, 1963. A small portion of appellee's lung tissue was removed and it was definitely ascertained that he did not have tuberculosis, but had what is known as "welder's siderosis," which is a collection of iron oxide on the lining of the lungs. The record shows that appellee was advised of his condition on or about January 2, 1964, but the appellant had no knowledge that a claim was being made against it until August 20, 1964, when the bill of complaint was filed.
Because of the examinations, hospitalization and operation, appellee claimed to have been totally disabled for twenty-seven weeks, and that he suffers a limitation of capacity and a shortness of breath, which is partially debilitating.
The record shows that he returned to work at the Michoud Plant on August 26 and worked until August 28. Subsequent to all examinations and tests, appellee returned to work on September 16 and continued to work until October 1, 1963, when it was suggested that he have his lung condition examined, and his employment was then terminated.
The record fails to disclose that the blow occasioned by the falling piece of 2x4 in any way brought about or affected his lung condition. The chancellor astutely held:
The court further finds that although the injury received in the State of Louisiana nor the lung condition emanating from his employment in the State of North Dakota are of themselves non-compensable, nevertheless, action of the defendant following the examination necessary because of the accident in the State of Louisiana resulting in the discharge of complainant was a primary and proximate cause of the loss of time and of the medical and hospital bills incurred by complainant and that under the statutes involved and the general and common law the defendant is liable unto the complainant for compensation during the period of his unemployment together with such medical and hospital bills as were incurred *915 and allowable under the statutes and law in force. (Emphasis added.)
In his bill of complaint, the appellee seeks to recover under:
(1) The Louisiana Workmen's Compensation Law for (a) an accidental injury within the meaning of such law, or (b) an industrial disease compensable under the law, specifically "welder's siderosis," which is contended to be a disease resulting from contact with "metals other than lead and their compounds" made compensable by Louisiana Revised Statutes, Title 23, section 1031.1, subd. B(1) (g), (1964), or by Pneumoconiosis, which is made compensable by subd. B(6) of the Act;
(2) The provisions of the Workmen's Compensation Law of any other state under which he might be entitled; and
(3) The common law or the civil law of the State of Louisiana due to the negligence of appellant in failing to provide the employee with a reasonably safe place in which to work, and with sufficient safety appliances to prevent the incurring of the injury and/or disease.
The fundamental question presented in this appeal is simply: Could this action be maintained in the Chancery Court of Harrison County, either under the laws of North Dakota or the laws of Louisiana?
We note the following statement in Stumberg, Conflict of Laws p. 223 (3rd ed. 1963):
A question has occasionally arisen as to whether local affirmative relief will be given under an applicable foreign (workmen's compensation) act. The answer would usually have to be in the negative because of the fact that the administration of compensation by a special board is ordinarily provided for under the statute giving rise to this type of relief. But, in exceptional cases, in which the foreign statute provided for judicial proceedings, the form has given affirmative relief in accord with foreign law.
North Dakota Century Code Annotated section 65-05-01 (1960) reads in part as follows:
* * * No compensation or benefits shall be allowed under the provisions of this title to any person * * * unless he or she * * * shall make a written claim therefor within the time specified in this section. Such claim shall be made by:
1. Delivering it at the office of the bureau or to any person whom the bureau by regulation may designate; or
2. Depositing it in the mail properly stamped and addressed to the bureau or to any person whom the bureau by regulation may designate.
It follows that the above stated general rule would preclude recovery under the North Dakota statute since the remedy under North Dakota Law is administrative rather than judicial. Appellee's claim could be filed only with the North Dakota Bureau of Compensation and could not be heard for the first time in any court, including the courts of North Dakota. See State for Benefit of Workmen's Compensation Bureau v. Broadway Inv. Co., 85 N.W.2d 251 (N.D. 1957).
Conceding, in the case of an insurance carrier, that suit can be brought in Mississippi under the Louisiana Compensation Law, still we do not have to and do not decide the question with reference to self insurers. In the case at bar the action could not be maintained under the Louisiana Compensation Law for the reason that the time for presenting the claim had lapsed.
Louisiana Revised Statutes, Title 23, section 1031.1 (1964) reads in part as follows:
D. All claims for disablement arising from an occupational disease are forever barred unless the employee files a claim with his employer within four *916 months of the date of his contraction of the disease or within four months of the date that the disease first manifested itself.
There are a number of well recognized exceptions to the general rule that statutory limitations upon the time within which suit must be brought are procedural. The following exception to the rule is noted in Stumberg, Conflict of Laws p. 148 (3d ed. 1963):
Another exception which is frequently made in the decisions exists where a statute which creates a right, in the same enactment provides for the time within which suit is to be brought. In such cases a majority of the courts have taken the position that the limitation qualifies the right so that unless suit is brought within the time allowed under the foreign statute, no suit may be brought at the forum, even though the time there may be longer.
In the case of Louisville & N.R. Co. v. Dixon, 168 Miss. 14, 20, 150 So. 811, 812 (1933), which was an action under the Louisiana Compensation Law, this Court held:
Thus there is introduced, as applicable to the rights of action given by the compensation statutes, the rule that, where a statute creates a right of action which did not exist under the common law and the same statute fixes the time within which action or proceedings to enforce the same may be begun, the time so fixed is not a mere statute of limitations, but is an integral part of the right thus created, is a substantive condition, so that, after the time fixed in the statute, the right to institute an action thereunder becomes extinct, not only in the state which created the right, but everywhere else.
Due to the fact that more than four months had elapsed before any claim was made, the appellee was barred from recovery under the Louisiana compensation laws; therefore the claim is barred here.
We finally reach the question of whether the appellee was entitled to recover either under the common law of North Dakota or under the civil law of Louisiana. North Dakota Century Code Annotated section 65-04-28 (1960) reads as follows:
Employers who comply with the provisions of this chapter shall not be liable to respond in damages at common law or by statute for injury to or death of any employee, wherever occurring, during the period covered by the premiums paid into the fund.
In view of the above section, we hold that the appellee could not bring a suit under common law for the reason that the North Dakota Act provides the exclusive remedy for those claiming under it. See: State for Benefit of Workmen's Compensation Fund v. E.W. Wylie Co., 79 N.D. 471, 58 N.W.2d 76 (1953).
Louisiana Revised Statutes, Title 23, section 1032 (1964) provides:
The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.
See: Sisk v. L.W. Eaton Co., 89 So.2d 425 (La. App. 1956); and Hall v. Continental Drilling Co., 245 F.2d 717 (5th Cir.1957). The Louisiana Workmen's Compensation Law is likewise an exclusive remedy.
It is the generally recognized rule that where an employee is hurt in a state where the workmen's compensation law applies, his remedy is exclusive.
Since the present suit is untenable under the laws of the states of North Dakota and Louisiana, it follows that it is not *917 tenable under the laws of the state of Mississippi. It is therefore not necessary for us to pass upon the question of whether the claim is compensable under the laws of either state. The quality of equity, like mercy, is not strained, but equity, irrespective of sympathy or generosity, cannot create remedies which the legislatures of the respective states have not afforded but, on the contrary, have expressly restricted or denied.
For these reasons the decree of the chancery court is reversed and decree entered here for appellant.
Reversed and decree entered for appellant.
GILLESPIE, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.